IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TAMMY M. LARKIN,

    Plaintiff,

v.

JOANNE B. BARNHART,
Commissioner of Social Security
Administration,

    Defendant.

No. C 03-03764 JSW

**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Now before the Court is the motion for summary judgment filed by Plaintiff Tammy M. Larkin ("Larkin") and the cross-motion for summary judgment filed by the Commissioner of the Social Security Administration ("Commissioner"). Having carefully considered the parties' pleadings, the administrative record, the relevant legal authority, and good cause appearing, the Court hereby DENIES Larkin's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**PROCEDURAL AND FACTUAL BACKGROUND**

    On August 12, 2003, Larkin filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner denying her request for Social Security benefits.

    Larkin filed an application for Supplemental Security Income ("SSI") benefits on November 16, 2000, alleging an onset of disability of July 1, 1999. (Tr. at 14, 99-101.) This application initially was denied on May 16, 2001, and was denied again on reconsideration on January 11, 2002. (*Id.* at 72-75, 78-81.) Larkin timely filed a request for hearing by an

Administrative Law Judge ("ALJ"), and a hearing was held on October 31, 2002. On April 24, 2003, the ALJ issued his decision and concluded that Larkin was not entitled to SSI payments. On June 21, 2003, the Appeals Council denied Larkin's request for review of the ALJ's decision.

According to the facts as set forth in the Administrative Transcript ("Tr."), Larkin was born on December 19, 1960, and was educated through the ninth grade. (*Id.* at 15, 32.) Larkin's past work experience included employment as a clerical worker, janitor, cleaner, and a telemarketer. (*Id.* at 115.) At the time of the hearing before the ALJ, Larkin had been working as a shopper two days a week for patients in a residential treatment program. (*Id.* at 15, 34, 37.) Larkin testified that she used a list to do the shopping, had someone else do the lifting and loading, could not lift anything heavier than a gallon of milk, and would feel "tired, very tired" after the shopping trips. (*Id.* at 37-38.) Larkin also testified that she was able to drive a car and care for her daughter. (*Id.* at 38, 43.)

Larkin alleged disability on the basis of pituitary adenoma, which was surgically resected in 1991, hypothyroidism, depression and anxiety. (*Id.* at 15.) Larkin complained of symptoms including fatigue, migraine headaches, blurred vision, dizziness, light headedness, irregular periods, poor sleep and concentration. She also testified that bending and lifting caused headaches and caused dizziness. (*Id.* at 15.)

Larkin testified at the hearing. The ALJ also heard testimony from Dr. Maria McAuliffe, a board certified neurologist, and from Gerald Belchick, a vocational specialist. The ALJ also considered a psychological assessment provided by Dr. Joanna Koulianos and an additional psychological assessment conducted after the hearing, which was provided by Dr. Dwight R. Murray. The ALJ also considered Larkin's medical records and opinions provided by her treating neurologists, Drs. Bowers and Tamas.

The ALJ determined that Larkin "suffers from no 'severe' physical impairment which has more than a minimal effect on her ability to work." (*Id.* at 16.) In reaching his conclusion, the ALJ rejected the opinions issued by Dr. Bowers and Dr. Murray. (*See id.* at 15-19.) Larkin claims the ALJ erred in doing so.

2

# ANALYSIS

**A.    Standard of Review of ALJ's Decision to Deny Social Security Benefits.**

A federal district court may not disturb the ALJ's decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

**B.    Legal Standard for Establishing a Prima Facie Case for Disability.**

The ALJ follows a five-step sequential evaluation process to determine whether the claimant is disabled. *Id.*; 20 C.F.R. § 416.920. As is pertinent to Larkin's claim, the ALJ determines whether the claimant is presently engaged in substantial gainful employment. 20 C.F.R. § 416.920(b). If he or she is not, the ALJ moves to the second step, and determines whether the claimant's impairment is "severe." 20 C.F.R. § 416.920(c).[1] If the ALJ finds that the claimant is not disabled at any step along the way, the claimant is not disabled and there is no need to continue subsequent steps of the analysis. 20 C.F.R. § 404.1520.

The claimant carries the initial burden of proving disability in steps one through four of the analysis. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, if the claimant establishes that he or she is unable to continue with past work, the burden shifts to the

---

[1] The third through fifth steps are set forth as follows. At the third step, when the claimant has an impairment that meets the duration required and is listed in Appendix 1 (a list of impairments which are presumed severe enough to preclude work located in subpart P of part 404 of 20 C.F.R. § 416.920), or is equal to a listed impairment, benefits are awarded without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). The fourth step is that if the claimant's impairments do not meet or equal a listed impairment, all relevant medical and other evidence in the claimant's case record is assessed and findings are made to determine the residual functional capacity of the claimant in order to evaluate whether the claimant can do his or her past work. 20 C.F.R. § 416.920(e). If the claimant is able to do past work, payments are denied. *Id.* Finally, at the fifth step, if the claimant cannot continue with past work, the ALJ must determine whether the claimant is able to do any other type of work. 20 C.F.R. § 416.920(f).

Commissioner in step five to show that the claimant can perform other gainful work. *Id*. In Larkin's case, the ALJ concluded that Larkin's impairment was not "severe," and thus found Larkin not disabled.

A "severe" impairment is one that significantly limits a person's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment is not severe only if it "is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (9th Cir. 1985). Whether an individual has a "severe" impairment must be determined with reference to the individual's ability to perform substantial gainful employment and cannot be based solely on lack of objective medical evidence. *Id*. at 1103.

### C. Substantial Evidence in the Record Supports the ALJ's Conclusion That Larkin Did Not Have A "Severe" Impairment.

Larkin argues that the ALJ's finding that she did not have a severe impairment was erroneous because he improperly rejected the opinions of Dr. Murray and Dr. Bowers, with respect to limitations related to her mental and physical conditions, in favor of the opinions provided by Dr. McAuliffe and Dr. Koulianos. In response, the Commissioner counters each of Larkin's allegations by contending the ALJ's findings are supported by substantial evidence in the record and free of legal error.

#### 1. The ALJ's decision to reject Dr. Murray's opinion was not in error.

Larkin contends that the ALJ erred by rejecting Dr. Murray's opinion and instead giving weight to Dr. Koulianos' opinion. Ordinarily, "an expert's report ... is not binding on the ALJ so long as he provides clear and convincing reasons for rejecting the opinion." *Coats v. Heckler*, 733 F.2d 1338, 1340 (9th Cir. 1984); *see also Montijo v. Secretary of Health and Human Services*, 729 F.2d 599, 601 (9th Cir. 1984). Where medical testimony is conflicting, however, the ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2003); *Magellanes*, 881

F.2d at 750. Where evidence is susceptible to more than one reasonable interpretation, the ALJ's decision must be upheld. *Magellanes*, 881 F.2d at 750.

In this case, the ALJ was faced with conflicting opinions from examining psychologists about Larkin's limitations due to her mental condition and accepted Dr. Koulianos' assessment over that of Dr. Murray. The ALJ stated that he rejected Dr. Murray's opinion because Dr. Murray departed from standard protocols is assessing Larkin's status, causing his conclusions to be based upon assessments "far from medically acceptable clinical and laboratory diagnostic techniques." (Tr. at 18.) The ALJ explained that Dr. Koulianos, on the other hand, used standard protocols as a basis for her opinion, which made it "impossible for him to compare [Dr. Murray's] conclusions with those of Dr. Koulianos." (*Id.*)

Although Dr. Murray responded to interrogatories posed by the ALJ and explained the procedures that he used and his reasons for doing so, the ALJ found the responses to be inadequate. The ALJ is empowered to determine credibility and resolve conflicting medical testimony. When there is more than one rational interpretation of the evidence before the ALJ, the Court must defer to the ALJ's conclusion. Accordingly, the ALJ did not err by rejecting Dr. Murray's opinion.

**2. The ALJ's decision to reject the opinion of treating physician Dr. Bowers was not in error.**

Larkin also argues the ALJ improperly rejected her treating physician Dr. Bowers's opinion as to both limitations based on her physical and mental condition. As stated above, in a case where the ALJ is presented with conflicting medical opinions, it is the ALJ's role "to determine credibility and resolve the conflict." *Batson*, 359 F.3d at 1195; *see also Magellanes*, 881 F.2d at 850. In general, one "afford[s] greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and to observe the patient as an individual." *Magellanes*, 881 F.2d at 751; *accord Batson*, 359 F.3d at 1195. Notwithstanding this general proposition, a "treating physician's opinion is not ... necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magellanes*, 881 F.2d at 751.

5

An ALJ may reject a treating physician's opinion whether or not it is contradicted; however, an ALJ must present clear and convincing reasons for rejecting an uncontradicted opinion. *Id.* If an ALJ rejects the opinion of a treating physician that conflicts with the opinion of an examining physician, he or she must "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* (quoting *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987), in turn quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)) (internal quotations omitted). The ALJ can meet this latter burden "by setting out a detailed an thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Cotten v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### a. The ALJ properly rejected the Dr. Bowers' opinion regarding Larkin's mental impairment.

Larkin contends that the ALJ improperly disregarded Dr. Bowers' opinion as to the limitations caused by her mental condition. The ALJ accepted instead the assessment of examining psychologist Dr. Koulianos. The rule requiring an ALJ to make findings setting forth specific, legitimate reasons for rejecting the opinion of a treating physician, which conflicts with that of an examining or nonexamining physician, does not apply when the non-treating physician's opinion rests on clinical findings that differ from the treating physician's findings. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). The non-treating physician's opinion is viewed as substantial evidence. *Id*.

Here, the ALJ was not required to set forth specific findings for disregarding Dr. Bowers' opinions on Larkin's mental condition because examining psychologist Dr. Koulianos conducted an independent clinical examination of Larkin. *See id.* Nonetheless, the ALJ did give specific, legitimate reasons for giving less weight to Dr. Bowers. He concluded that Dr. Bowers' opinion regarding the limitations imposed by Larkin's mental condition should not be afforded great deference because he is not a psychiatrist and did not base his findings on a psychiatric assessment. Although psychiatric evidence may be given by any licensed physician, that Dr. Bowers is not a specialist in psychiatry goes to the weight to be given his psychiatric

6

opinions. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Given the fact that other evidence in the record directly conflicts with Dr. Bowers' opinion, specifically Dr. Koulianos' clinical findings, Larkin's daily activities, and her consistent work activity, it was not clear error for the ALJ to disregard his opinion. *See* 20 C.F.R. § 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Therefore, the ALJ's decision to reject Dr. Bowers' opinion regarding Larkin's limitations due to her mental condition in favor of Dr. Koulianos' opinion was not error.

        **b.    The ALJ did not improperly reject Dr. Bowers' opinion regarding Larkin's physical limitations.**

Larkin also argues the ALJ erred by crediting the non-examining expert witness opinion of Dr. McAuliffe, as to her physical limitations, over that of her treating physician Dr. Bowers. Although the contrary opinion of a non-examining medical expert does not alone constitute a specific legitimate reason for rejecting an examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Magallanes*, 881 F.2d at 752. In *Magallanes*, the Ninth Circuit held that the ALJ properly accepted the opinion of a nonexamining physician over the claimant's treating physician, stating that "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinion" of the treating physicians. *Id*. at 752 (emphasis omitted). Rather, the court stated that the ALJ also relied on contrary reports from examining doctors, laboratory test results and testimony from the claimant that conflicted with the treating physician's opinion. *Id*. at 751-52.

Here, as in *Magallanes*, the ALJ set forth specific, legitimate reasons for rejecting Dr. Bowers' earlier opinion that Larkin was restricted to light duty work due to her physical limitations. Specifically, the ALJ accepted the opinion of Dr. McAuliffe, who opined that Dr. Bowers' finding could only be made on the basis of Larkin's own subjective complaints because neither her brain condition nor any other physical problem would so limit her. Dr. McAuliffe's findings are supported by MRI tests and the opinion of one of her other treating physicians Dr. Tamas, both establishing she was physically stable and Larkin's own testimony as to her ability

to work and perform daily activities. Furthermore, the record demonstrates that Dr. Bowers later amended his earlier finding and stated that no disability was expected from a neurological standpoint. Accordingly, the ALJ's decision to reject Dr. Bowers' earlier opinion that Larkin is restricted to light duty work due to her physical condition was not in error.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Cross-Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: December 22, 2005

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE